IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ADAM R. LACKEY                                                                                    PLAINTIFF

v.                            Civil No. 5:16-cv-05025

SHERIFF KELLEY CRADDUCK;
LIEUTENANT J. MARTINEZ;
SERGEANT LARA; SERGEANT
MONDAY; and SERGEANT
T. SHARP                                                                                          DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil rights action filed by Plaintiff pursuant to 42 U.S.C. § 1983. He proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated in the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC). The events that are the subject of this action occurred while Plaintiff was incarcerated in the Benton County Detention Center (BCDC).

The case is before the Court on the Motion for Summary Judgment (ECF No. 32) filed by the Defendants. On June 8, 2017, a hearing was held to allow Plaintiff to testify in response to the Motion. Plaintiff appeared by video conference from the ADC. At the conclusion of the hearing, the Motion was taken under advisement pending preparation of this report and recommendation.

**I. BACKGROUND**

Plaintiff was booked into the BCDC on May 13, 2014, on a charge of sexual assault. ECF No. 34-2 at 1. He was classified as a sex offender. *Id.* Sex offenders were housed separately for their protection. ECF No. 34-6 at 16. Sex offenders were housed in E-104 or E-107. *Id.* at 15.

Plaintiff testified at the hearing that he had been at the BCDC for several months before he

learned about the General Equivalency Degree (GED) program. Defendants submitted an affidavit from Lieutenant Robin explaining that from 2014 through early 2016, Lieutenant Jesus Martinez was the liaison for certain volunteer programs including the GED program. ECF No. 34-1 at 2. The GED program was offered as a result of volunteers from the local community college, NorthWest Arkansas Community College (NWACC). *Id.* The volunteers set the time and date of the classes and the class size. *Id.* Generally, classes were limited to ten inmates. *Id.* The materials were donated. *Id.* The classes were "sporadically offered based on the availability and willingness of the volunteers." From the Fall of 2015 through at least November of 2016, "no GED classes were offered because there were no volunteers to provide the classes." *Id.* An inmate stayed in the GED class until he felt ready to take the test. ECF No. 34-1 at 3. The volunteers administered the test. *Id.* Once an inmate passed the test, he was moved out of the class and another inmate moved in. *Id.*

> The BCDC:
>
> did not decide who was in the class except to the extent that a particular class member would not be allowed if his/her presence was a safety risk for other members of the class or for him/herself. For example, an individual being held in protective custody would not be placed in the class because of the security risk to that person. All sex offenders are held in protective custody.

ECF No. 34-1 at 2. This concept was applied to "any volunteer offerings . . . where the volunteer would be in a setting with multiple detainees at once." *Id.* The volunteer was free to meet with an individual but that was up to the volunteer to make a commitment for individual offerings. *Id.* at 3.

Plaintiff testified that beginning in July of 2014, he asked to join the GED program. Jail records show that on July 24, 2014, Plaintiff asked if it was true you could get your GED while at the BCDC. ECF No. 34-3 at 1. Sergeant Sharp responded: "you can attend classes yes." *Id.*

On July 25, 2014, Plaintiff requested a GED book to study for class. ECF No. 34-3 at 2.

Sergeant Sharp responded that Plaintiff would need to ask the teacher at his next class. *Id.*

On July 30, 2014, Plaintiff requested schedule and enrollment information for the GED program. ECF No. 34-3 at 4. He was told to resubmit the request to Lieutenant Martinez. *Id.* Plaintiff did so the next day. *Id.* at 5. In response, Lieutenant Martinez indicated the program would start again in three weeks.[1] *Id.*

On August 10, 2014, Plaintiff stated he would like to enroll in the GED class and asked how to do that. ECF No. 34-3 at 6. In response, Sergeant Lara stated Plaintiff would be put on the list. *Id.*

Plaintiff testified he left it at this, thinking that he would be told when the next enrollment was. After about a month, Plaintiff inquired again. He was told it was too late to enroll in the current program and that he would be put on the list. Plaintiff asked for a GED book and was told inmates did not get the book until they were in the program.

On August 25, 2014, Plaintiff submitted a request indicating he was just checking on the GED classes. ECF No. 34-3 at 7. In response, Sergeant Lara indicated she would talk to Lieutenant Martinez. *Id.*

On August 29, 2014, Plaintiff asked that he at least be provided a GED book if he could not get into the GED classes. ECF No. 34-3 at 8. Sergeant Lara stated it was too late for the current class but that Plaintiff was on the list for next time. *Id.*

Later that same day, Plaintiff submitted the following request:

I understand that it is now to[o] late for the GED class. I have been asking about the

---

[1]There is nothing on the print out of the kiosk entry that shows the request was submitted to Lieutenant Martinez. From what has been submitted to the Court, there does not appear to be a place to direct a request to a particular staff member. However, Lieutenant Martinez responded to the request.

class for better than a month. I was told on 8-2 that the class would start back in 3 weeks at that point. Then I was told on 8-11 that I would be put on the list. Now I['[m told it's to[o] late and I would be put on the list for next time. I just would really appreciate a GED book if there is any extra. I would really like to use my time here to try and better myself rather than just take up space.

Sergeant Lara responded that Plaintiff was on the list for next time but that the detention center did not control when the teachers came.

On September 11, 2014, Plaintiff asked when the next GED class would begin. ECF No. 34-3 at 9. Sergeant Monday responded that he was "not sure at this time." *Id.*

On September 15, 2014, Plaintiff asked when the next GED class started. ECF No. 34-3 at 10. He was told to send a request to Lieutenant Martinez. *Id.*

On September 20, 2014, Plaintiff asked how long it would be until the next GED class. ECF No. 34-3 at 11. He also asked for a GED book. *Id.* Plaintiff indicated he had been checking the book cart but had no luck obtaining one. *Id.* Sergeant Sharp responded: "ok."

On September 25, 2014, Plaintiff stated he had submitted the September 20, 2014 request to the attention of Lieutenant Martinez.[2] ECF No. 34-3 at 12. He pointed out that Officer Sharp had answered "ok," and Plaintiff stated he did not know what this meant and he had not been given any more information. *Id.* He asked for more information. *Id.* Sergeant Monday responded saying that Plaintiff would be considered for the GED class once one started again. *Id.* Sergeant Monday also indicated that the jail did not supply the GED books to inmates but that Plaintiff could have someone bring him one. *Id.*

Plaintiff testified he also asked Deputy Wilkins if there was a GED book on the book cart.

---

[2]Once again, the kiosk print out provided to the Court of the September 20th request does not indicate it was to the attention of Lieutenant Martinez.

According to Plaintiff, Deputy Wilkins told him to forget about it because he was not going to get into the GED program because he was a sex offender.

On October 30, 2014, Plaintiff submitted a request asking about the GED class. ECF No. 34-3 at 13. He was told to submit a request to Lieutenant Martinez. *Id.*

On October 31, 2014, Plaintiff submitted a request asking what was "up with the GED classes?" ECF No. 34-3 at 14. He was informed the request would be passed along to Lieutenant Martinez. *Id.*

On December 2, 2014, Plaintiff asked if the next GED class was coming up soon. ECF No. 34-3 at 15. He stated he had asked about the program for several months and would like an honest answer. *Id.* In response, he was told that the program would not start until after the first of the year. *Id.*

Plaintiff testified that despite the GED class being offered several times, he was never put into the class. In addition to being in the sex offender pod, Plaintiff testified there were also occasions during his stay at the BCDC when he was on suicide watch and would have been unavailable to take the class. On February 1, 2015, Plaintiff pleaded guilty to the charge of sexual assault. ECF No. 34-6 at 13.

Plaintiff testified he asked a church for a GED book and was provided one. Plaintiff indicated that inmates are allowed to have two books in their cells. He testified he had a Bible and the GED book. When there was a shakedown on May 21, 2015, the GED book was confiscated. On May 23, 2015, Plaintiff asked for it back. ECF No. 34-3 at 16. Plaintiff was asked if the book had his name in it. *Id.* He asked to speak to Lieutenant Martinez and also sent a grievance to Sheriff Cradduck. However, he did not get the book back.

On May 26, 2015, Plaintiff responded he was not sure if his name was in the book but that it was the 2013 edition. ECF No. 34-3 at 17. Deputy Devore responded asking what Plaintiff's question was. *Id.*

On May 27, 2015, Plaintiff submitted the following request:

> About the GED book. I put in a request asking if I could get it back because it was taken during the shake down in E107 the other day. Sgt. Monday answered and asked if my name happened to be in the book. I responded that I wasn't sure but it is the new 2013 edition. I have been here since 5-13-14, I've asked over and over again about taking the GED program.

ECF No. 34-3 at 18. He indicated he had been fortunate to get a book from a church and would like to get it back as soon as possible. *Id.*

On May 28, 2015, Plaintiff was transferred to the ADC. ECF No. 34-2 at 2. Plaintiff returned to the BCDC on August 13, 2015, on a new sexual assault charge. *Id.* at 4; ECF No. 34-6 at 13. Between August of 2015 and February of 2016, Plaintiff testified he was back and forth between the ADC and the BCDC several times.

On August 23, 2015, Plaintiff submitted a request asking if he was eligible for the GED program. ECF No. 34-3 at 19. Lieutenant Martinez responded that if Plaintiff was selected, he would be notified. *Id.*

On August 29, 2015, Plaintiff submitted two requests about the GED program stating that he had been at the BCDC from July of 2014 until February of 2015 and continually made requests to take the GED class, but had never been selected. ECF No. 34-3 at 20. He stated he wanted to find out exactly how the program worked at the BCDC. *Id.* He indicated that education was important to him. *Id.* He noted that he had been told more than once that he was on the list for the next class but never got to take the class. *Id.* He stated neither he nor his brother, who was also incarcerated

at the BCDC, knew of anyone who was in the program. *Id.* Lieutenant Martinez responded that if the ADC offered the class, and Plaintiff was scheduled to return to the ADC, he had to take the class at the ADC. *Id.*

On September 4, 2015, Plaintiff asked for a copy of the actual policy for the GED program. ECF No. 34-3 at 21. Lieutenant Martinez responded: "Why?" *Id.*

Plaintiff states he was advised by Deputy Wilkins that the violent inmates and the sex offenders, in E104 and E107, were not allowed to take the GED class. On September 8, 2015, Plaintiff submitted the following request:

> I was informed by deputy Wilkins that E104 and E107 do not get the GED program so I would like a copy of the policy so that I may review the rules and regulations. I would also like to see where it states that a person that has already signed can not take it. Also I don't see why a copy can't just be given to someone [u]pon request without being asked why they wish to have one. Thank you.

ECF No. 34-3 at 22. Lieutenant Martinez responded that the GED was not a right given to inmates. *Id.* Instead, he said it was a privilege. *Id.*

Plaintiff then asked why a small class could not be offered for the sex offenders. He was told that it was something that could be looked into.

Plaintiff maintains that on September 9, 2015, he submitted a request stating he was still requesting a copy of the policy. The request is not among those submitted by the Defendants. Plaintiff states Lieutenant Martinez responded: "noted."

On September 12, 2015, Plaintiff submitted a request stating he was not sure what "noted" meant and did it mean that Lieutenant Martinez was going to give him a copy of the policy. ECF No. 34-3 at 24. On September 16, 2015, Plaintiff asked that they disregard his request. *Id.*

On September 25, 2015, Plaintiff submitted a request asking when they would find out who

was selected for the GED program. ECF No. 34-3 at 25. Lieutenant Martinez responded that classes would start in October but he was not sure of the date. *Id.*

On October 7, 2015, Plaintiff was transported to the ADC. ECF No. 34-2 at 5. On October 30, 2015, Plaintiff was booked back into the BCDC. *Id.* at 7.

On November 3, 2015, Plaintiff asked for the address to the NWACC administrative office or just NWACC. ECF No. 34-3 at 26. He was provided with the address the following day. *Id.*

On November 4, 2015, Plaintiff was released to the ADC. On December 16, 2016, Plaintiff was booked back into the BCDC. ECF No. 34-2 at 8.

On December 22, 2015, Plaintiff asked how it was going with getting a GED class started in E-pod. ECF No. 34-3 at 27. Lieutenant Martinez responded that GED classes for the jail were not being offered at the present time. *Id.*

In December of 2015 and January of 2016, the GED class was not offered at the jail. On January 4, 2016, Plaintiff submitted four inmate requests. ECF No. 34-3 at 30. Plaintiff stated he had been trying to get into the GED program since July of 2014. *Id.* He indicated he had someone contact NWACC and they were told the jail decided who was allowed to take the program. *Id.* Plaintiff indicated he had recently been told the GED class was not being offered now but was told by a D-pod trustee and D-pod inmates that they were doing the GED program. *Id.* Plaintiff asked why it seemed that the E-pod inmates were the only ones not allowed to take the program. *Id.* Plaintiff again asked for a copy of the jail policy on the subject. *Id.* In response, Lieutenant Martinez stated that the GED classes were not being offered by the community college at that time. *Id.*

On January 10, 2016, Plaintiff requested copies of all his kiosk requests and grievances. ECF

No. 34-3 at 28. Officer Holt responded that Plaintiff could review the documents on the kiosk but that copies were provided only through the court in connection with a lawsuit. *Id.*

On January 13, 2016, Plaintiff submitted two inmate requests asking about the GED program and it being offered to E-pod inmates. ECF No. 34-3 at 29. Plaintiff indicates Lieutenant Martinez stated he would work on getting the GED program started for E-pod but that he had made little or no progress. *Id.* According to Plaintiff, he submitted the requests to the attention of Captain Guyll but the kiosk entry does not indicate this. *Id.* Sergeant Monday forwarded the requests to Lieutenant Martinez. *Id.* Lieutenant Martinez responded he had spoken to the Dean of NWACC. *Id.* Lieutenant Martinez stated: "Yes I did make arrangements for 104 and 107 to have GED classes also, but until they provide the professional instructors there is nothing I can do." *Id.*

Plaintiff testified it was possible that NWACC would not do a separate class for E-pod. ECF No. 34-6 at 33. If they refused, Plaintiff did not believe Lieutenant Martinez would have any control over it. *Id.* at 33-34.

On February 2, 2016, Plaintiff pleaded guilty on the second sexual assault charge. ECF No. 34-6 at 14. On February 3, 2016, Plaintiff was released to the ADC. ECF No. 34-2 at 8.

To Plaintiff's knowledge, no sex offender had been allowed in the GED program. ECF No. 34-6 at 28. Plaintiff was aware of a number of other sex offenders who inquired about taking the GED program. *Id.* at 32.

Plaintiff testified he believes Sheriff Cradduck should have been more aware of what was going on in his jail. ECF No. 34-6 at 22. Plaintiff believes Sheriff Cradduck ignored a lot of issues including the GED program. *Id.* at 23. While Plaintiff acknowledges he cannot prove it, Plaintiff believes Sheriff Cradduck was aware of Plaintiff's desire to take the GED class. *Id.*

Plaintiff never spoke personally to Sheriff Cradduck. ECF No. 34-6 at 25. Plaintiff testified he did send Sheriff Cradduck a letter in the regular mail about the GED program. *Id.* However, Defendants point out that Plaintiff's mail log does not show any outgoing letter to Sheriff Cradduck. ECF No. 34-4. Plaintiff never got a response to the letter. ECF No. 34-6 at 26.

Plaintiff testified he believes Lieutenant Martinez made the decision not to allow him to take the GED class. ECF No. 34-6 at 24. Plaintiff testified that Lieutenant Martinez told him that he "was the one that made all decisions over the GED program." *Id.* In Plaintiff's opinion, Lieutenant Martinez was giving him "beat-around-the-bush answers." *Id.* at 26.

Plaintiff testified that on one occasion when Lieutenant Martinez was in the pod, Plaintiff asked if he could speak with him about the GED program. ECF No. 34-6 at 27. Lieutenant Martinez pulled Plaintiff out of the pod. According to Plaintiff, Lieutenant Martinez "was very aggressive in his manner in his language and body language." *Id.* Plaintiff testified that Lieutenant Martinez said he would not let people in E-104 or E-107 into the GED program. *Id.* According to Plaintiff, Lieutenant Martinez said "[h]e was not going to subject the teachers to that. We were violent offenders, and he just couldn't do it." *Id.* Plaintiff believed this conversation occurred in 2014 rather than September of 2015, as he stated in his complaint.[3] *Id.* at 27-28. To Plaintiff's knowledge no other sex offender has been involved in the GED program. *Id.* at 28.

Plaintiff testified that Sergeant Lara also gave beat-around-the-bush answers. ECF No. 34-6 at 34. Plaintiff indicated that none of the officers he talked to in person wanted to talk about the GED program. *Id.* Plaintiff stated that "they clearly expressed that they w[ere] not going to discuss

---

[3]Plaintiff initially states this conversation occurred in late 2014. ECF No. 34-6 at 27. On the following page of the deposition, Plaintiff indicates it occurred in May of 2014. *Id.* at 28.

the GED program with me." *Id.* Plaintiff believes Sergeant Lara should have relayed any information he had about the program and the progress made, or expressed Plaintiff's interest in the program. *Id.* at 34-35. Plaintiff testified his claims against Sergeant Monday and Sergeant Sharp are the same. *Id.* at 35. They gave indirect answers, refused to talk about it, or said they were not worried about it at the time. *Id.*

Plaintiff's official capacity claim is based on the policy of excluding sex offenders from the GED program. ECF No. 34-6 at 36. Plaintiff felt if the jail provided a program or educational service for all other inmates, the program should be provided to sex offenders. *Id.* Plaintiff testified that he felt the instructors had the right to say whether or not they were willing to teach to the sex offender pod. *Id.* at 36-37. However, Plaintiff believed if that was the reason, Lieutenant Martinez would have just said so. *Id.* at 37. Plaintiff believed Lieutenant Martinez simply did not ask the instructors about their willingness to teach the sex offenders. *Id.*

Plaintiff believed he had a constitutional right to discuss the program with the officers. ECF No. 34-6 at 34. He felt that if it was a program they offered at the jail that they were "obligated to help me get into the program. If it's a program that the jail offers, they should do whatever they can to help me get into the program -- to provide me with it, just like everybody else gets provided with it." *Id.*

Plaintiff maintains he has been discriminated against in connection with the provision of the GED class at the jail. Specifically, Plaintiff maintains he was denied the right to participate in the GED program offered at the BCDC because he was classified as a sex offender. Plaintiff also contends he was denied a copy of the BCDC's policy with respect to the GED program.

Plaintiff eventually obtained his GED at the ADC. ECF No. 34-6 at 40-41. It took a couple

of months--three at the most. *Id.* at 51. However, had he obtained his GED at the BCDC, Plaintiff stated he would have been eligible to take college or vocational classes at the ADC. *Id.* at 44. Not having his GED delayed Plaintiff's eligibility for further education. *Id.* at 44-45.

## II. APPLICABLE STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III. DISCUSSION

Defendants have moved for summary judgment on the following grounds: (1) Sheriff Cradduck had no personal involvement in the alleged unconstitutional actions; (2) there is no constitutional right to a GED program--they argue sex offenders are in protective custody and inmates in protective custody are considered safety risks; (3) they are entitled to qualified immunity; and (4) there is no basis for official capacity liability.

**(A). Sheriff Cradduck's Involvement**

Sheriff Helder argues that he is merely an official whose position was one under which the operation of the detention center fell. Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Soc. Servs.*, 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994); *see also Whitson v. Stone County Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("In a § 1983 case, an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat

superior or supervisor liability") (internal quotations omitted). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability of the supervisory defendant, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) (*quoting Mayorga v. Missouri*, 442 F.3d 1128, 1132 (8th Cir. 2006)); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993) (section 1983 liability requires some personal involvement or responsibility).

Here, Plaintiff never personally spoke to or saw Sheriff Cradduck. Instead, Plaintiff states he mailed a single letter to the Sheriff to which he received no response. Plaintiff also argues that the Sheriff was generally aware of the GED program. However, Plaintiff has established no causal link or direct responsibility of Sheriff Cradduck as to the exclusion of the Plaintiff in particular, or sex offenders in general, from the GED program. Sheriff Cradduck is not liable in his individual capacity for his staff's actions.

**(B). Due Process**

The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, §1. The Clause has both a procedural and a substantive component. *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). The procedural sphere is focused on guaranteeing fair process. *Id.* The "substantive sphere . . . 'bar[s] certain government actions regardless of the fairness of the procedures used to implement them.'" *Id.* (*quoting Daniels v. Williams*, 474 U.S. 327, 331 (1986)).

"Before official conduct or inaction rises to the level of a substantive due process violation[,] it must be so egregious or outrageous that it is conscience-shocking." *Burton v. Richmond*, 370 F.3d 723, 729 (8th Cir. 2004). The conduct must be "so brutal and offensive that it did not comport with traditional ideas of fair play and decency," or that it "interferes with rights implicit in the concept of ordered liberty." *County of Sacramento*, 523 U.S. at 846 (internal quotation marks and citation omitted).

The conduct at issue in this case cannot be considered so egregious or outrageous that it shocks the conscience. Furthermore, an inmate has no protected liberty or property interest in the right to participate in an educational program. *See e.g., Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999)(inmate had no liberty or property interest in attending culinary arts program); *Nicholson v. Carroll*, 390 F. Supp. 2d 429, 435 (D. Del. 2005)(no property or liberty interest in education). Defendants are entitled to summary judgment on the substantive due process claim.

**(C). Equal Protection Rights**

The Equal Protection Clause of the Fourteenth Amendment requires that "all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). An equal protection claim is stated when a fundamental right has been infringed or a state actor intentionally discriminates against the plaintiff because of membership in a protected class. *See e.g., Purisch v. Tennessee Tech. Univ.*, 76 F.3d 1414, 1424 (6th Cir. 1996). Prisoners are not a protected class. *Murray v. Dosal*, 150 F.3d 814 (8th Cir. 1998). Education is not a fundamental right. *Plyler v. Doe*, 457 U.S. 202, 223 (1982); *Friends of Lake View School Dist. Inc. v. Beebe*, 578 F.3d 753, (8th Cir. 2009)(education not a fundamental right for Fourteenth Amendment purposes).

"When an equal protection claim is neither based on a 'suspect class' or grounded in a fundamental right, it is subject to rational basis review." *Gilmore v. Cty. of Douglas*, 406 F.3d 935, 937 (8th Cir. 2005)(citations omitted). To prevail, Plaintiff must prove: (1) he was treated differently than similarly situated inmates; and (2) the different treatment was not rationally related to a legitimate government objective. *City of Cleburne, Tex.*, 473 U.S. at 439-40; *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994).

"Prisoners have no constitutional right to educational or vocational opportunities during incarceration; however, if the state provides educational or vocational opportunities to its prisoners, it cannot deny equal access to such services to all prisoners absent a rational basis." *Wishon v. Gammon*, 978 F.2d 446, 450 (8th Cir. 1992). Sex offenders are frequently separated from other inmates in a detention facility because general population inmates may target the sex offenders. *See e.g., Tucker v. Royce*, No. 1:09-cv-35, 2011 WL 541116 (N.D. Miss. Feb. 8, 2011)(placing sex offenders in protective custody because they are likely to be attacked by other inmates). At the BCDC, sex offenders are housed separately and kept separated from inmates in the general population except when being transported to court.

Plaintiff maintains that sex offender inmates were unconstitutionally denied the right to participate in the GED program while general population inmates were allowed to participate. For purposes of the GED program, Plaintiff contends sex offenders are similarly situated to inmates in the general population.

Defendants ask the Court to consider the following: the GED program was not funded or provided by Benton County; Plaintiff was in and out of the BCDC on multiple occasions; and that during the time relevant to the Complaint, there was an extended period of time when no classes

were offered. Further, they argue that "while Plaintiff may have been told he would be considered for the class, there was not a class which could accommodate his status as a sex offender. The classes that were offered were offered to detainees in general population - not those in a protected classification such as sex offenders." ECF No. 33 at 6. Defendants maintain this was for the safety of the inmates and volunteers. *Id.*

There is no suggestion in the record that NWACC, or its volunteers, refused to teach the GED class to the sex offenders. Clearly Defendants had no budgetary constraints as the program was offered free to the jail and there was no evidence introduced to suggest Defendants were faced with establishing priorities for scarce educational resources. While Defendants did not teach the class, select the teachers, or determine when the class would be offered, Lieutenant Martinez was in charge of coordinating the program.

The rational basis proffered by the Defendants for treating general population inmates differently from sex offender inmates is safety and security of inmates, volunteers, and staff. Without a doubt the safety and security of the institution can constitute a rational basis for classifying inmates differently or for excluding certain inmates from programs or activities, *i.e.* for justifying different treatment. *See e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

It has long been held that the courts should not "substitute our judgment on . . . difficult and sensitive matters of institutional administration, for the determinations of those charged with the formidable task of running a prison." *O'Lone*, 482 U.S. at 353. "[C]ourts are ill equipped to deal with the increasingly urgent problems of prison administration and reform. Judicial recognition of that fact reflects no more than a healthy sense of realism. Moreover, where state penal institutions are involved, federal courts have a further reason for deference to the appropriate prison authorities."

*Procunier v. Martinez*, 416 U.S. 396, 405 (1974). "Of course, 'federal courts must take cognizance of the valid constitutional claims of prison inmates.'" *Hosna v. Groose*, 80 F.3d 298, 304 (8th Cir. 1996)(*quoting Turner v. Safely*, 482 U.S. 78, 84 (1987)).

Upon careful review, the Court concludes there is no genuine issue of material fact as to whether the sex offender inmates were similarly situated with general population inmates. The sex offender inmates were kept separate at all times except when being transported to court because there was a heightened risk of attack due to the nature of the charges against them. Plaintiff acknowledged that the sex offenders were segregated for safety and security reasons.

Even if the Court assumes for purposes of this summary judgment motion that the Plaintiff has met his burden of showing that the sex offender inmates were similarly situated to inmates in general population, the limitation placed on the sex offender inmates was rationally related to legitimate penological needs. To allow the sex offender inmates to take GED classes with the general population inmates would create an increased security risk not only for the sex offender inmates but for the staff and volunteers who could potentially become involved in an altercation among the inmates. *See e.g., Little v. Terhune*, 200 F. Supp. 2d 445, 452 (D.N.J. 2002)("the disparate availability of educational programming between inmates in general population . . . and inmates in administrative segregation . . . is rationally related to overlapping security concerns and budgetary concerns").

With respect to Sergeant Lara, Sergeant Monday, and Sergeant Sharp, the Court further notes that these Defendants were not in charge of the volunteer program and merely responded to grievances or requests submitted by Plaintiff or failed to speak with him about the issue when present in the pod. This conduct is insufficient to establish liability under § 1983. *Beck v. LaFleur*, 257 F.3d

764, 766 (8th Cir. 2001)(allegations of defendants personal involvement or responsibility for constitutional violation are necessary to state a § 1983 claim).

**(D). Qualified Immunity**

Having found no genuine issues of material fact as to whether the Plaintiff's constitutional rights were violated, Defendants are entitled to qualified immunity. *See, e.g., Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

**(E). Official Capacity**

A suit against Sheriff Cradduck or any of the other Defendants, in their official capacity is considered a suit against Benton County. *Barbeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010). "A county is liable under § 1983 if an action or policy itself violated federal law, or if the action or policy was lawful on its face but led an employee to violate a plaintiff's rights and was taken with deliberate indifference as to its known or obvious consequences." *Butler v. Fletcher*, 465 F.3d 340, 342 (8th Cir. 2006)(citation omitted). Taking as true the facts as alleged by the Plaintiff, he fails to allege the existence of a policy or custom that was the moving force behind the alleged constitutional violation.

**IV.   CONCLUSION**

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 32) be **GRANTED** and this case **DISMISSED WITH PREJUDICE**.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 31st day of October 2017.

/s/ *Erin L. Wiedemann*
HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE